OPINION
SMITH, Circuit Judge.
This appeal from summary judgment requires us to interpret a consulting 2 agreement. SmartTran, Inc. (“SmartTran”), a shipping consultant, and Alpine Confections, Inc. (“Alpine”), a candy company, entered into a consulting agreement (the “Agreement”) for shipping advice. Halfway through the Agreement’s term, Alpine underwent a corporate reorganization and was acquired by 1-800-Flowers.com (“Flowers”) and some of Alpine’s subsidiaries were spun off to a new corporation. SmartTran alleges that Alpine and its subsidiaries breached the Agreement by refusing to pay SmartTran consulting fees after the corporate reorganization. SmartTran also alleges that Flowers breached the Agreement, and, in any event, owes SmartTran restitution under the theories of unjust enrichment and quantum meruit. SmartTran and Alpine both moved for summary judgment and the District Court[1] granted summary judgment for the defendants, concluding that the Agreement did not provide for payment of fees when SmartTran’s recommendations were not used. We agree with the District Court’s analysis and will affirm its grant of summary judgment.[2]
*653 The Agreement, as a matter of law, did not provide for SmartTran to receive fees where its recommendations were not used. As such, SmartTran’s breach of contract claim against all defendants cannot survive summary judgment. The claims against Alpine’s subsidiaries that were spun off fail for the additional reason that they were not parties to the Agreement and had no obligation to pay SmartTran. The unjust enrichment and quantum meruit claims against Flowers are unsuccessful because Flowers never received any benefit from SmartTran’s consulting services.
I.
SmartTran analyzes companies’ small parcel transportation needs and recommends ways to negotiate discounted contracts with shipping companies, like United Parcel Service (“UPS”). Alpine, prior to the corporate reorganization, was a candy company that also owned other candy companies, including defendants Maxfield Candy Co. (“Maxfield”), Kencraft, Inc. (“Kencraft”), and Harry London (collectively, the “Alpine Defendants”).[3]
On January 27, 2004, Alpine entered into the Agreement with SmartTran. The Agreement’s prefatory recital explained that SmartTran was to “review [Alpine’s] use of small package transportation services and to determine if [Alpine] can achieve cost savings.” In the Agreement, Alpine warranted that at the time of entering into the Agreement it was not “negotiating a rate discount increase, or decrease in rates, with any small package transportation service provider.” If Alpine received a rate discount increase, or a decrease in applicable rates during the term of the Agreement, SmartTran would aecrue fees as set forth in paragraph seven of the Agreement. That paragraph states that SmartTran is entitled to fifty percent of all savings realized by Alpine through SmartTran’s recommendations:
SmartTran’s fees for services will be as follows:
A. Fifty percent (50%) of all savings realized payable for a period of thirty-six (36) months from the date the savings first become effective.
B. SmartTran shall invoice [Alpine] monthly for the fee earned pursuant to this Agreement which invoice shall be payable within five (5) business days of receipt.
C. SmartTran will not be paid a fee unless savings actually become effective.
The Agreement also required Alpine to pay SmartTran for all fees accrued by Alpine’s “related corporations, subsidiaries, associations, and related businesses which utilize the recommendations submitted by SmartTran.” If Alpine began using SmartTran’s recommendations anytime within two years of the date SmartTran submitted its recommendations, then the fee structure described in paragraph seven applied.
After entering into the Agreement, SmartTran reviewed Alpine’s shipping characteristics and offered recommendations to decrease Alpine’s shipping costs. Alpine used those recommendations to negotiate a contract with UPS (the “Alpine/UPS Contract”), and began shipping under that contract on June 20, 2005. Because the Alpine/UPS Contract provided Alpine lower shipping rates than it re *654 ceived prior to utilizing SmartTran’s recommendations, Alpine began paying SmartTran fifty percent of its savings, as required under paragraph seven of the Agreement. Approximately ten months later, in April 2006, Alpine underwent a corporate reorganization. In that reorganization, Maxfield and Kencraft, Alpine’s subsidiaries, became subsidiaries of a newly formed corporation, KDM Holdings (“KDM”), and Flowers purchased Alpine and Harry London.[4]
The Alpine Defendants continued to pay fees to SmartTran for another six months, through October 2006. On November 3, 2006, KDM Informed SmartTran that it had negotiated a new contract with UPS, effective October 22, 2006, based on Max-field and Keneraft’s shipping characteristics. KDM stated that it would not pay SmartTran fees for shipping that occurred after October 22, 2006, because it had not shipped under the Alpine/UPS Contract after that date. On November 27, 2006, Alpine and Harry London informed SmartTran that as of October 23, 2006, they were no longer shipping under the Alpine/UPS Contract and would not pay SmartTran fees for shipping after that date. After their purchase by Flowers, Alpine and Harry London began shipping under Flowers’s carrier agreement with UPS (the “Flowers/UPS Contract”). That contract provided better shipping rates than the Alpine/UPS Contract.
In response to the Alpine Defendants’ refusals to pay fees, SmartTran filed a complaint in the United States District Court for the Western District of Pennsylvania charging all defendants with breach of contract and the implied duties of good faith and fair dealing, and seeking restitution from Flowers under the theories of quantum meruit and unjust enrichment. SmartTran’s claims are based on its belief that the Agreement entitled it to fees for the entire thirty-six month fee payment period even though the Alpine Defendants ceased shipping under the Alpine/UPS Contract after approximately sixteen months.
SmartTran moved for summary judgment on liability and the defendants moved for summary judgment on liability and damages. The District Court referred the matter to a Magistrate Judge who recommended that SmartTran’s motion for summary judgment be denied and that defendants’ motion be granted. The District Court adopted the Magistrate’s reasoning and granted summary judgment for the defendants. This timely appeal followed.
II.
SmartTran argues that the District Court erred in concluding that the Agreement entitled SmartTran to fees only when its recommendations were actually used by Alpine. On appeal, SmartTran raises four arguments challenging the District Court’s interpretation of the Agreement. As discussed below, none of these arguments justifies reversal of summary judgment for the defendants on the breach of contract and the implied duties of good faith and fair dealing claims.
First, SmartTran argues that the District Court failed to view the evidence in the light most favorable to the non-moving party because it concluded that the Alpine Defendants’ use of SmartTran’s recommendations was a condition precedent to payment. This argument fails at the outset because the Agreement was unambiguous and the interpretation of an *655 unambiguous contract is an issue of law, not an issue of fact. Kripp v. Kripp, 578 Pa. 82, 849 A.2d 1159, 1163 (2004). The District Court was not required to interpret the Agreement in the light most favorable to SmartTran because it was interpreting an unambiguous contract as a matter of law.[5]
Second, SmartTran argues that, once Alpine used its recommendations to effect savings, SmartTran was entitled to 50 percent of all savings that could have been realized by Alpine using SmartTran’s recommendations during the following 36 months, even if Alpine ceased to use those recommendations during the 36-month period. On the other hand, Alpine insists that, once Alpine used SmartTran’s recommendations to effect savings, SmartTran was entitled only to 50 percent of all savings generated by the use of those recommendations over the ensuing 36 months. Alpine is clearly correct. It contracted to pay for the right to utilize SmartTran’s recommendations a fee based on “all small package savings effected by SmartTran” and no savings were effected by Smart-Tran’s recommendations after Alpine stopped shipping under the Alpine/UPS Contract.
Third, SmartTran argues that the Alpine Defendants’ course of conduct shows that they shared the same understanding of the Agreement as SmartTran. The conduct identified by SmartTran consisted of Alpine and Harry London employees questioning the legal implications of the Agreement for the corporate reorganization and the Alpine Defendants’ payments of fees to SmartTran until October 2006. Neither of these activities establishes a course of conduct supporting SmartTran’s interpretation of the Agreement.
Alpine and Harry London’s questioning of the legal implications of the Agreement for the corporate reorganization had nothing to do with the parties’ course of conduct under the Agreement. For example, SmartTran cites a March 16, 2006, email from a Harry London executive asking questions about the Agreement:
Is the contract with Alpine or some other entity? What is the term? What are the provisions in the event the Flowers deal happens — is this a liability that Flowers will assume? Can KDM be carved out? Are there other factors to be considered?
This email only suggests that a Harry London executive did not have a complete understanding of the Agreement — not that Harry London agreed with SmartTran’s interpretation of the Agreement. To establish a course of conduct, one must actually be acting under the contract. The Alpine Defendants’ payments until October 2006 also fail to support SmartTran’s argument because Kencraft, Maxfield, and Harry London all shipped under the Alpine/UPS Contract and accrued fees until the end of that month. These payments fail to establish a course of conduct supporting SmartTran’s view that it should receive fees under the Agreement even when its recommendations were not used.
Finally, SmartTran argues that it is entitled to fees even if the Alpine Defendants were no longer shipping under the Alpine/UPS Contract because the Alpine Defendants benefitted from the lower rates in the Alpine/UPS Contract in negotiating their own contracts with UPS. For *656 Alpine and Harry London, the record belies SmartTran’s assertion. After being purchased by Flowers, Alpine and Harry London shipped under the Flowers/UPS Contract, a contract that had earlier been negotiated independently by Flowers and with no assistance from SmartTran. For Maxfield and Kencraft, SmartTran’s argument may have some merit. Those two companies negotiated a new contract and perhaps benefitted from SmartTran’s recommendations in negotiating that contract. As described in the next section, however, any such claims against Maxfield and Ken-craft fail because they were not signatories to the Agreement.
III.
The breach of contract and the implied duties of good faith and fair dealing claims against Maxfield and Kencraft also fail because neither company was a signatory to the Agreement. See Electron Energy Corp. v. Short, 408 Pa.Super. 563, 597 A.2d 175, 177 (1991) (“[0]ne cannot be liable for a breach of contract unless one is a party to that contract.”). Nowhere in the Agreement are Alpine’s subsidiaries obligated to pay SmartTran for their use of SmartTran’s recommendations. Alpine was responsible for payment of all fees accrued by its subsidiaries. As such, neither Maxfield nor Kencraft can be held liable for breaches arising from the Agreement. SmartTran’s argument that there is a genuine issue of material fact as to whether Maxfield and Kencraft benefitted from its recommendations in the negotiation of their new contract with UPS fails because they were not obligated to pay SmartTran under the Agreement. Thus, any such claim would be one for unjust enrichment and SmartTran does not allege that Maxfield and Kencraft were unjustly enriched.
IV.
No genuine issues of material fact exist for the unjust enrichment and quantum meruit claims against Flowers. It is undisputed that SmartTran never performed any work for Flowers and never played any role in Flowers’s negotiation of the Flowers/UPS Contract. Thus, Flowers never benefitted from SmartTran’s services and was never unjustly enriched. See AmeriPro Search, Inc. v. Fleming Steel Co., 787 A.2d 988, 991 (Pa.Super.Ct.2001). SmartTran’s quantum meruit claim fails for the same reason. See id.
V.
The Agreement, as a matter of law, did not entitle SmartTran to fees if its recommendations were not used and Flowers never received any benefit from Smart-Tran’s recommendations. Thus, we will affirm the District Court’s grant of summary judgment for the defendants.

. The District Court exercised diversity jurisdiction over this case, 28 U.S.C. § 1332(a)(1), and we review its grant of summary judgment under 28 U.S.C. § 1291.

. We exercise "plenary review over the District Court's grant of summary judgment." Shuman ex rel. Shertzer v. Penn Manor Sch. Dist. 422 F.3d 141, 146 (3d Cir.2005) (internal quotation omitted). A court should grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that títere is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying that standard, "a court must view the facts in the *653 light most favorable to the nonmoving party and draw all inferences in that party's favor.'' Shuman, 422 F.3d at 146 (internal quotation omitted).

. Fannie Farmer was named as a defendant, but the parties now agree that Fannie Farmer is a brand name and not a company.

. After the corporate reorganization, Alpine changed its name to Fannie May Confections Brand, Inc., but for the purposes of this opinion we will continue to refer to the company as Alpine.

. Recognizing that it cannot survive summary judgment without an ambiguity in the Agreement, SmartTran claims that the District Court concluded that the Agreement was ambiguous. This claim is baseless — the District Court did not find ambiguity in the Agreement.